UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRIENISE SAPORA
SAMMONS,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Case No. 2:14-cv-12377

District Judge Denise Page Hood

Magistrate Judge Anthony P. Patti

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17) AND TO DENY PLAINTIFF'S MOTION FOR REMAND IN LIEU OF MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 14) and **DENY** Plaintiff's motion for remand (DE 13).

**II.    REPORT**

Plaintiff, Trienise Sapora Sammons, brings this action under 42 U.S.C. §§

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

benefits and supplemental security income.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

remand (DE 13), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 17), Plaintiff's reply (DE 19), and the administrative record (DE 8).[1]

## A.   Background

There are two application periods relevant to the instant action.  First, Plaintiff protectively filed her applications for benefits on March 28, 2007, alleging that she has been disabled since April 2, 2005.  (R. at 124.)  Plaintiff's first applications were denied and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Troy Patterson held a hearing on November 12, 2009 and determined that Plaintiff was not disabled within the

---

[1] As a preliminary matter, although her complaint challenges the administrative ruling on the merits, Plaintiff limits this motion only to remand under Sentence Six "in lieu of" a summary judgment motion.  In her reply brief, she states that "for reasons . . . which will be laid out before this Honorable Court in the event that the instant motion is denied . . . ALJ Imana's denial of benefits is unsupported by [substantial evidence] . . . ." (DE 19 at 7.)  In other words, instead of filing this motion "in lieu of" a request for summary judgment, as she had initially indicated, she is now hedging her bets, and attempting to reserve her right to later file a motion for summary judgment. However, on August 22, 2014, the Court issued a scheduling order requiring Plaintiff to file "a motion for summary judgment setting forth the reasons underlying the request for reversal of the final decision."  (DE 9.)  The parties were also cautioned that unless they were informed otherwise, the case would be "deemed submitted on the briefs, without oral argument and ready for Report and Recommendation or other disposition as of the date Plaintiff's reply is due or is filed . . . ."  (Id.)  The reply brief was due, after several extensions, on March 6, 2015.  Plaintiff filed her reply brief four days past due, but the Court has chosen not to strike it.  Accordingly, any attempt on Plaintiff's behalf to file another motion would be out of time and a "second bite" at the proverbial apple is precluded.

2

meaning of the Social Security Act.  (R. at 98-137.)   Plaintiff did not appeal that decision.  (DE 13 at 1.)  ALJ Patterson's decision became the Commissioner's final decision.

Plaintiff filed her second set of applications on June 28, 2011, alleging a disability beginning on January 13, 2010.  (R. at 27.)  Plaintiff's second set of applications were denied and she sought a *de novo* hearing before an ALJ.  ALJ Christopher R. Inama held a hearing on October 11, 2012 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 27-75.)  On April 18, 2014, the Appeals Council denied Plaintiff's request for review.  (R. at 1-4.)  ALJ Inama's decision became the Commissioner's final decision.  Plaintiff then timely commenced the instant action, challenging ALJ Inama's decision.

### B.    Plaintiff's Mental Health History

 Plaintiff sought treatment at the Saginaw County Community Mental Health Authority on April 2, 2009.  (R. at 381.)  At her initial visit, she described her history as a victim of physical and sexual abuse, including the death of her mother and siblings when a Molotov cocktail was thrown into their home.  (Id.)  She indicated that she was anxious all the time, very easily irritated, paranoid, and unable to focus.  (R. at 382.)  In addition, she reported that she sleeps a lot, but has trouble sleeping at night, that her weight fluctuates, and that her depression does

3

not respond to medication.  (Id.)  On January 6, 2010, Plaintiff reported that she was having suicidal ideation, and was sent to the Covenant Hospital Emergency Department.  (R. at 517.)  On May 7, 2010, Plaintiff reported that she was "doing quite well," despite having paranoid thoughts and decreased appetite.  (R. at 352.)  Kay McLaren, RN, NP, described Plaintiff as alert and oriented, with no auditory or visual hallucinations.  (Id.)  On September 22, 2010, Plaintiff reported that she did not feel she could trust anyone, including her therapist, but made a commitment to work with a therapist.  (R. at 355-360.)  On June 8, 2011, Plaintiff reported that she was having abdominal pains, irritability, and trouble sleeping.  (R. at 352.)  She denied auditory or visual hallucinations, but noted that she had flashbacks.  (Id.)  Nurse McLaren noted that Plaintiff was alert and neatly dressed.  On August 24, 2011, Plaintiff reported that she continued to struggle with post-traumatic stress disorder ("PTSD"), including flashbacks and nightmares.  (R. at 533.)

On January 7, 2010, Plaintiff underwent an initial psychiatric evaluation at the White Pine Inpatient mental health service.  (R. at 484.)  She was admitted voluntarily, following her admission to Covenant Hospital for suicidal ideation and intent to overdose.  Plaintiff reported that she had been unable to sleep, was having flashbacks of sexual assault, and symptoms of PTSD related to her mother's murder.  She also reported auditory and visual hallucinations, and being easily

4

irritated.  (R. at 486-87.)  On examination, nurse practitioner Cheryl Lacy opined

that Plaintiff was alert and oriented and that her thoughts were clear and organized,

but her concentration was poor.  (R. at 486.)  She was assessed with a global

assessment functioning ("GAF") score of 20.[2]  (R. at 487.)  Nurse practitioner Lacy

diagnosed Plaintiff with Bipolar disorder and PTSD.  (Id.)  Plaintiff was

discharged on January 14, 2010.  (R. at 490.)  Nurse practitioner Lacy reported that

Plaintiff attended group therapy and was appropriate and pleasant.  (R. at 492.)  In

addition, she noted that Plaintiff's "depression did seem to lift, and she became

significantly less irritable."  (Id.)  Her GAF score was assessed as 40-45.[3]  (R. at

493.)

---

[2] The GAF scale was used to report a clinician's judgment of an individual's
overall level of functioning.  Clinicians selected a specific GAF score within the
ten-point range by evaluating whether the individual was functioning at the higher
or lower end of the range.  *See* American Psychiatric Ass'n, Diagnostic and
Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association,
4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 20 indicated some danger of
hurting self or others, or occasionally failing to maintain minimal personal
hygiene, or gross impairment in communication.  DSM-IV-TR at 34.  However,
"the most recent version of the DSM does not include a GAF rating for assessment
of mental disorders."  *Bryce v. Comm'r of Soc. Sec.*, No. 12-CV-14618, 2014 WL
1328277, at \*10 (E.D. Mich. Mar. 28, 2014).

[3] A GAF score of 41-50 was indicative of serious symptoms (e.g., suicidal
ideation, severe obsession rituals, frequent shoplifting) or any serious impairment
in social, occupational, or school functioning (e.g., no friends, unable to keep a
job).  DSM-IV-TR at 34.

On September 26, 2011, Plaintiff met with State Agency Reviewer Nathalie Menendes, Psy.D. (R. at 466-470.) Plaintiff reported that she was diagnosed with depression, bipolar disorder, and PTSD. (R. at 466.) She reported nightmares and flashbacks, and recounted her history as a victim of physical and sexual abuse. She also described difficulty sleeping. On an average day, Plaintiff described waking at 7:00 a.m. to get her children to school, followed by a nap, straightening up the house, doing laundry, or preparing meals. (R. at 467.) According to Plaintiff, her aunt helps her with grocery shopping because she does not like to be out alone. (R. at 468.) Dr. Menendes described Plaintiff as oriented, with no evidence of hallucinations, delusions, or other unusual thought content. (Id.) Dr. Menendes opined that Plaintiff is able to understand and follow one to two step tasks, had no documented intellectual deficits, but that her symptoms of bipolar disorder and PTSD could interfere with her ability to perform a job. (R. at 469.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the October 11, 2012 administrative hearing, Plaintiff testified that she was born in Michigan, but went to Texas to live with her aunt as a young child, following the murder of her mom and three of her siblings when their house was firebombed. (R. at 53-54.) Plaintiff attended school in Texas, but did not finish the tenth grade. (R. at 55.) She testified that she had problems "understanding the

words" in school and indicated that things were hard for her to understand.  (R. at 55.)  Plaintiff was molested as a young child and was sexually assaulted at age fourteen by a fellow student at her school.  (R. at 54-55.)   Plaintiff testified that she was raised by her aunt and her grandmother, who were mentally and physically abusive toward her.  (R. at 56.)

At the time of the hearing, Plaintiff had five children.  She testified that she was able to get the school-aged children off to school every day, but that it made her tired and upset.  (R. at 59.)  She stated that she worked at a Meijer supermarket for about three months.  (R. at 62.) [4] She indicated that her superiors and co-workers at Meijer's talked to her like she did not understand what she was doing and like she was "just dumb."  (R. at 63.)

Plaintiff testified to her mental health issues.  She indicated that she took a number of medications and noted that taking *all ten* of her medications at the same time made her unable to "do anything."  (R. at 59-60 and 188.)  Plaintiff testified that she had trouble concentrating on anything and that she cried two or three times per week.  (R. at 61 and 64.)  She admitted that her weight fluctuated from 110 pounds, up to 180 pounds, then back down to 130 pounds.  (R. at 63.)  Plaintiff

---

[4] Although it is referred to as "Meyers" in the transcript, the record evidence lists the name as "Meijer's."  (R. at 466.)  I take judicial notice, based on the colloquy at R. 62, that the correct name of the store, well-known throughout Michigan, is simply Meijer.

testified that she attended therapy appointments at the Jane Street Clinic two or three times per month.  (R. at 64.)

Plaintiff averred that she did not seek psychiatric care growing up because her family did not "really believe" in getting help, but indicated that she had been admitted to the White Pines Psychiatric Facility three times for attempting to hurt herself by cutting her wrists.  (R. at 57-58.)  Plaintiff indicated that she had problems sleeping and experienced nightmares and flashbacks.  (R. at 58-59.) Plaintiff explained that the flashbacks and nightmares involve reliving her experience of being molested and the house fire that killed her mother and siblings. (R. at 64.)

Upon questioning from the ALJ, Plaintiff testified that she was sentenced to probation in 2010 for "maintaining a drug house."  (R. at 65.)  The father of four of her children was arrested and sent to prison for the same incident.  (R. at 66.) Plaintiff averred that she did not use controlled substances herself.  (Id.)

### 2.    Vocational Expert Testimony

Timothy Shaner testified as the Vocational Expert ("VE") at the October 11, 2012 administrative hearing.  (R. at 67-73.)  The VE classified Plaintiff's past relevant work as: clerical aid in a school setting, with a light exertional level and a

specific vocational preparation[5] ("SVP") of 3; food service worker, with a medium

exertional level and an SVP of 2; sales attendant, with a light exertional level and

VP of 2.  (R. at 70.)   The ALJ asked the VE to determine if a hypothetical person

of Plaintiff's age, limited educational level educational, and work experience could

perform unskilled work at all exertional levels with the following limitations:

> no concentrated exposure to pulmonary irritants such as smoke, gases,
> noxious fumes and the like.  Work will be limited to simple, routine,
> repetitive tasks with only simple work related decisions and few
> workplace changes.  No fast paced production requirements which
> [are]defined as constant activity with tasks performed sequentially in
> rapid succession.  And only occasional interaction with supervisors
> and co-workers.  And no tandem tasks.  Finally, occasional public
> contact.

(R. at 70-71.)   Based on this hypothetical, the VE testified that the hypothetical

individual could not perform Plaintiff's past relevant work, but could perform

other work in the national economy.  (R. at 71.)  The VE identified the positions of

housekeeper, with 8,700 positions in the state of Michigan and 378,000 nationally;

laundry worker, with 2,400 positions in the state and 86,000 nationally; and

inspector, with 5,800 positions in the state and 129,000 nationally.  (Id.)  The VE

clarified that missing more than one day of work per month would lead to

---

[5] "The DOT lists a specific vocational preparation (SVP) time for each described
occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968,
unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an
SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-
4P.

disciplinary action.  He further testified that employees are expected to stay on task

for 90% of the day, which can include concentrating.  (R. at 72.)  Finally, the VE

noted that all of the positions require the hypothetical individual to "react

appropriately to supervisor instructions."  (R. at 73.)

### D.  THE ADMINISTRATIVE DECISION

On November 30, 2012, the ALJ issued his decision.  (R. at 27-42.)  At step

one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not

engaged in substantially gainful activity since June 28, 2011.  (R. at 29.)

At step two, the ALJ found that Plaintiff had the following severe

impairments: degenerative disc disease, asthma, anxiety disorder (PTSD), and

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).
Although a dispositive finding at any step terminates the ALJ's review, *see Colvin
v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential
review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet
    or equal the criteria of an impairment set forth in the Commissioner's
    Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the
    claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and
    residual functional capacity, can the claimant perform other work
    available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th
Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

affective disorder (bipolar disorder).  (Id.)  He concluded that Plaintiff's

impairment of obesity was non-severe because there was no indication that the

impairment resulted in any work-related limitations.  (R. at 30.)

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 30-

33.)

At step four of the sequential process, the ALJ evaluated Plaintiff's residual

functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to

perform light work at all exertional levels

> except she needs to avoid pulmonary irritants such as smoke, gases,
> noxious fumes, etc [sic]; she is limited to simple 1-2 step instructions;
> the claimant must avoid factory pace rate work, such as on an
> assembly line; the claimant is limited to only superficial interpersonal
> contact with the public and co-workers.

 (R. at 33.)  In reaching this conclusion, the ALJ referred to the prior ALJ decision

dated January 12, 2012.  (R. at 34.)  The ALJ noted that he was required to adopt

the prior ALJ's finding unless Plaintiff presented new and material evidence

relating to the finding, or there was a change in the law, regulations, or rulings

---

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th
Cir. 2002).

affecting the finding.  The ALJ concluded that Plaintiff did not present new and

material evidence and accordingly adopted the prior ALJ's findings.  (Id.)  Relying

on the VE's testimony, the ALJ determined that Plaintiff was unable to perform

her past relevant work.

At step five, the ALJ concluded that Plaintiff was capable of performing

other jobs that exist in significant numbers in the national economy.  (R. at 41.)  He

therefore concluded that Plaintiff was not disabled under the Social Security Act.

(R. at 42.)

## E.  ANALYSIS

Plaintiff asserts that she is entitled to remand under Sentence Six of § 405(g)

because of new and material evidence.  Specifically, she initially contends that 65

out of "71 pages of the proffered Saginaw County Community Mental Medical

("Saginaw") records for the period March 13, 2007 through January 6, 2010" had

been omitted.[6]  (DE 13 at 2.)  Accordingly, Plaintiff argues, the record upon which

the ALJ relied was "reversibly deficient with reference to the critical issue of

whether or not Plaintiff was psychologically disabled."  (Id.)

The Commissioner opposes Plaintiff's motion.  In the Commissioner's

motion for summary judgment, she argues that Plaintiff has failed to establish good

---

[6] Plaintiff later stipulates in her reply brief that 37, not 65, pages were omitted from
the Saginaw record, dated March 13, 2007 through December 17, 2009.  (DE 19 at
3.)

cause for failing to ensure that the evidence was included in the administrative record.  Defendant argues that the Agency mailed an exhibit list to Plaintiff's attorney in November 2012, which identified the number of pages and date ranges associated with the Saginaw records.  The Commissioner notes that the agency sent a "Notice of Hearing" to Plaintiff and her attorney one month prior to the hearing, which "prominently" notified them of their right to review the file.[7]  (DE 17 at 6.) The Commissioner asserts that, although the ALJ issued the decision in late November 2012 and the Appeals Council declined review in mid-April 2014, there was no evidence that Plaintiff disputed the evidence presented to the Appeals

---

[7] The document states in relevant part:

> **You May Submit More Evidence and Review Your File**
>
> It is very important that the evidence in your file is complete and up-to date.  If there is more evidence, such as recent records, reports, or evaluations that you want us to see, please mail or bring that evidence to us as soon as possible.  If you cannot submit the evidence before the hearing, you may bring it to the hearing.  Submitting evidence before the hearing can often prevent delays in reviewing your case.
>
> If you want to see your file before the date of your hearing, please call this office and make arrangements.  If your file is electronic, you may ask for a copy on a compact disc.  You may also review your file on the day of the hearing if you come in at least 30 minutes before the time set for your hearing.  Please call us in advance if you will need more than 30 minutes to review your file.

(R. at 79.)

Council.  Furthermore, the Commissioner argues that Plaintiff fails to establish that the omitted evidence is material.

The Court can remand for further administrative proceedings "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding."  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996).  I will consider each requirement in turn.

### a.    New

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(quoting *Sullivan v. Finklestein*, 496 U.S. 617, 626 (1990)).  As Plaintiff notes, she cannot show "a reasonable justification for the failure to acquire and present the new evidence for inclusion in the record, because the evidence had been timely acquired and timely submitted to Defendant."  (DE 19 at 2.)

The evidence at issue is dated March 13, 2007, February 17, 2009, April 17, 2009, April 23, 2009, June 11, 2009, September 24, 2009, October 8, 2009, December 2, 2009, and December 17, 2009, and was therefore in existence at the time of the October 11, 2012 hearing, the November 30, 2012 decision, and the April 18, 2014 decision of the Appeals Council.  However, neither party disputes that Plaintiff filed the records with the Commissioner prior to the hearing and the

records were, through some administrative error, simply not included as part of the administrative record.

Plaintiff does not provide any case law to demonstrate the propriety of proceeding with a remand under Sentence Six where the moving party concedes that the records are not new. Defendant, however, points to an unpublished Western District of Michigan case, noting that in a similar situation, "Plaintiff's attorney should have corrected the purported transcript error long before this stage of judicial review," and concluding that "[t]he remedy for an omission from the certified administrative record is correction of the record through a supplemental certified administrative record, not remand to the Commissioner under sentence six." *Blank v. Comm'r of Soc. Sec.*, No. 1:10-CV-987, 2013 WL 364017, at *4 (W.D. Mich. Jan. 30, 2013). In addition, the Sixth Circuit has held that such evidence is not new where omitted documents "clearly were in existence and available to [the claimant] during the administrative proceedings," and the claimant "asserts that all of these materials were previously submitted to the Commissioner." *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006).

In an attempt to address the *Blank* holding, Plaintiff filed with the Court a formal written request seeking a supplemental certified administrative record. (DE 19 at 5 and DE 19-1.) It is unclear, however, how Plaintiff expects the Court to

15

proceed with respect to such a request in the context of a fully briefed motion to remand pursuant to Sentence Six of § 405(g).  Incorporating the records into the transcript at this point does not rectify the fact that they are not new.

### b.    Material

Even if the Court were to construe the materials as new, Plaintiff fails to meet the burden of materiality in the instant action.  A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Even where evidence has been inadvertently excluded from the record, the claimant must still prove materiality for the purposes of a Sentence Six remand.  *Hollon*, 447 F.3d at 485-86.  Here, the records date from 2007 through 2009.  According to Plaintiff:

> The records in question include a 2007 suicide attempt and subsequent involuntary psychiatric admission, detailed childhood and adolescent history of being born into a broken home teeming with domestic violence, having been raped at age 5 by her mother's boyfriend, witnessing the firebombing deaths of her mother and three siblings at age 8, being physically and emotionally abused by her grandparents, being raped again at age 14, missing school to avoid her football player rapist and thereby flunking out of school, a personal history of alcohol and drug abuse, repeated GAF scores in one or more of the severe categories (20-50), poor judgment and insight, anxious mood and paranoid thought processes, diagnoses including Major Depression, Recurrent Severe without Psychotic Features, Anxiety Disorder [not otherwise specified], and PTSD, continuous anxiety, recurrent death wishes, horrific recurrent nightmares, regular crying

16

spells, racing thoughts, acting erratically, audio-visual hallucinations, fits of rage, forgetfulness, moodiness, difficulty focusing, frank full-blown panic attacks, legal difficulties, fatigue, irritability, poor memory, suicidal ideation, and paranoia.

(DE 19 at 6-7.)  Plaintiff's history is undeniably tragic and her ability to continue to raise her children in incredibly difficult circumstances is laudable.  However, Plaintiff testified to nearly all of the above at the hearing, and the evidence at issue merely restates those points.  (*See* R. at 53-58.)  Furthermore, all of the evidence at issue relies on Plaintiff's subjective report of her symptoms and history to various health or mental health professionals.  The ALJ concluded that Plaintiff's subjective report of her symptoms was not entirely credible, and she does not challenge this finding in the current motion to remand.  (R. at 39.)

Any evidence to which Plaintiff did not specifically testify is largely cumulative with respect to the evidence that *was included* in the record.  (*See, e.g.*, R. at 351 (describing her mother's death, and Plaintiff's history as a victim of violence and sexual assault), 352 ("she has some paranoid thoughts"), 354 (describing her sleeping issues), and 382 (describing her anxiety, paranoia, inability to concentrate, and depression), 486 (describing her self-report of auditory and visual hallucinations)).  Such cumulative evidence does not meet the threshold of materiality.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (declining to overturn the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions

17

already present on the record."). Finally, "[i]f the proffered documents were as critical as [P]laintiff's attorney now claims, it was incumbent upon [him or her] to review the record in advance of the administrative hearing and make sure that the documents were included in the record." *Blank*, 2013 WL 364017, at *4.

### c.   Good Cause

In the Sixth Circuit, a Social Security claimant shows good cause by giving "a valid reason for his [or her] *failure to obtain* evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (emphasis added); *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."). Here, Plaintiff asserts that good cause exists because she provided the Commissioner with the evidence, but it was omitted from the record. Defendant counters that Plaintiff fails to demonstrate good cause because she and her attorney were notified of their right to review the file pre-hearing, and that they either did not exercise this right or failed to notice the omission. Defendant again cites to *Blank* for the proposition that filing the documents but failing to ensure the record is complete "falls short of establishing good cause." (DE 17 at 13, citing *Blank*, 2013 WL 365017 at *4.)

Plaintiff argues that Defendant's reliance on *Blank* is misplaced and cites to *Hollon, supra.,* 447 F.3d at 488, to demonstrate that the Commissioner's "loss of

the administrative record injects a troublesome element of uncertainty into the proceedings. . . ."  (DE 19 at 4, citing *Id.*)  However, *Hollon* affirmed the District Court's decision *to deny remand* under Sentence Six, finding that the claimant *did not show good cause*, because she failed to demonstrate that the evidence was "unavailable to her during the course of the administrative proceedings," nor did she identify "any obstacles to her submission of this evidence during those proceedings."  *Id.* at 485.  As the *Hollon* court pointed out, "a court may order such a remand '*only* upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'"  *Id.* at 485 (emphasis in original) (quoting 42 U.S.C. § 405(g)).  Here, Plaintiff has failed to make these mandated showings, which are required of her for remand under Sentence Six of the statute.

### F.  CONCLUSION

It is troubling to the Undersigned that such evidence was submitted to the Commissioner and apparently excluded from the record by mistake; however, even where the Sixth Circuit has similarly acknowledged that the "loss of the administrative record injects a troublesome element of uncertainty into the proceedings," it has been "unwilling to order as a remedy that the administrative record be reopened to any and all submissions, absent any ground for believing that this additional evidence would result in a materially different record."  *Hollon*,

19

447 F.3d at 488. For the reasons described above, I believe that such a remand would not alter the outcome, given the cumulative nature of the records at issue. Accordingly, the additional evidence would not result in a materially different record.

Moreover, in the instant case, Plaintiff and her counsel had notice and opportunity to review the record prior to the administrative hearing, and apparently did not do so. *See Cline*, 96 F.3d at 149 (holding that attorney error was not good cause for the purposes of remand under Sentence Six.). Correcting such an error at this level, where Plaintiff has failed to show the requisites for a remand under Sentence Six—and particularly where it was well within her or her counsel's ability to do so at the administrative hearing level—would exceed this Court's "limited authority under § 405(g)." *Hollon*, 447 F.3d at 486. Accordingly, I recommend that the Court deny Plaintiff's motion for remand under Sentence Six of § 405(g).

In sum, from a review of the record as a whole, the Undersigned concludes that Plaintiff has failed to demonstrate her entitlement to a remand under Sentence Six of § 405(g). Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand and **GRANT** Defendant's motion for summary judgment.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: July 1, 2015                          s/Anthony P. Patti
                                             Anthony P. Patti
                                             UNITED STATES MAGISTRATE JUDGE



I hereby certify that a copy of the foregoing document was sent to parties of record
on July 1, 2015, electronically and/or by U.S. Mail.

                                             s/ Michael Williams
                                             Case Manager to the
                                             Honorable Anthony P. Patti

22